UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JAY JONES                                                                                              PLAINTIFF

V.                                    No. 4:20-CV-269-KGB-JTR

EVERETT LITZSEY, JR.,
Captain, Tucker Max, ADC                                                                DEFENDANT

### RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Baker may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I.  Introduction

On March 12, 2020, Plaintiff Jay Jones ("Jones"), who, at that time, was incarcerated in the Tucker Maximum Security Unit of the Arkansas Division of Correction ("ADC"), filed a *pro se* § 1983 Complaint alleging that Defendant Captain Everett Litzsey, Jr. ("Litzsey") violated his constitutional rights. Specifically, Jones alleges that, on January 7, 2020, when Jones questioned Litzsey about mail

and documents being withheld, Litzsey "hos[ed] him down with" mace, then cuffed him and smashed his head against the wall, leaving him semi-conscious. *Doc. 1 at 5–6*.

On March 27, 2020, Jones filed a Motion to Correct/Amend Complaint. *Doc. 4*. The Motion was granted and Jones' Amended Complaint was docketed on April 16, 2020. *Doc. 7; Doc. 8*. Jones' Amended Complaint is substantially the same as his original Complaint, except that it corrects the Defendant's name to "Litzsey" (originally named "Litzey") and adds a claim that Litzsey confiscated two rings from Jones.[1] That depravation of property claim has previously been dismissed. *Doc. 9; Doc. 13*.

Litzsey has filed a Motion for Summary Judgment, a Statement of Facts, and Brief in Support arguing that Jones' excessive force claim should be dismissed because he failed to exhaust his administrative remedies. *Doc. 28; Doc. 29; Doc. 30*. Jones filed a Response (*Doc. 38*) and Litzsey filed a Reply (*Doc. 39*). Thus, the issues are joined and ready for disposition.[2]

---

[1] In order to amend his Complaint, it appears that Jones simply took a copy of his original complaint, which had been docketed at Document 2, and wrote an additional paragraph at the very end. *Compare Doc. 2 at 6 with Doc. 8 at 7*. Jones did not resign or redate the Amended Complaint. Consequently, both the Complaint and Amended Complaint are represented to be signed under penalty of perjury on the same date—February 10, 2020. *Doc. 2 at 7; Doc. 8 at 8*.

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine

## II.  Discussion

### A.   The PLRA's Mandatory Exhaustion Requirements

The PLRA requires prisoners to exhaust all available administrative remedies before filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Muhammad v. Mayfield,* 933 F.3d 993, 1000 (8th Cir. 2019).

The PLRA requires inmates to: (1) fully and properly exhaust their available administrative remedies as to each claim that is later raised in a § 1983 action; and (2) complete the exhaustion process before initiating the § 1983 action. *Jones,* 549 U.S. at 211, 219–20, 223–24; *Woodford*, 548 U.S. at 93–95; *Burns v. Eaton,* 752 F.3d 1136, 1141–42 (8th Cir. 2014). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, Jones must

---

dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

3

comply with the exhaustion requirements of the incarcerating facility before he can properly file a § 1983 action.

The relevant ADC directives and regulations governing exhaustion require that, in connection with each claim, a prisoner must, among other things: (1) "specifically name each individual involved;" (2) state only one problem or issue per grievance; and (3) include a "brief statement that is specific as to the substance of the issue or complaint to include the date, place [and] personnel involved or witnesses." *See* ADC Adm. Dir. ("AD") 14-16 § IV(C)(4), (D)(2), & (E)(2); AD 19-20 § IV(C)(4), (D)(2), & (E)(2); and AD 19-34 § IV(C)(4), (D)(2), & (E)(2).³

The grievance forms themselves also contain these instructions to ensure prisoners are aware of them. *Id.* at Att. I ("Briefly state your one complaint/concern and be specific as to the complaint, date, place, name of personnel involved and how you were affected."). If an ADC inmate wishes to grieve more than one issue, he or she "must use a separate [grievance] form for each issue[, as] [o]nly one issue will be addressed in the response to a grievance." *Id.* at § IV(D)(2). Any [a]dditional problems/issues contained in the grievance will not be addressed and will not be considered as exhausted." *Id.* Finally, the ADC's policy cautions prisoners that, if

---

³ Litzsey submitted, with his summary judgment papers, a copy of AD 14-16, which became effective April 11, 2014. *Doc. 28-1*. It is unclear why Litzsey relies on AD 14-16 instead of AD 19-20, effective August 1, 2019 through December 1, 2019, or AD19-34, effective December 2, 2019 to present. Regardless, any difference between these Administrative Directives does not meaningfully affect the three-step procedure Jones was required to utilize to exhaust his administrative remedies.

4

they fail to "exhaust their administrative remedies as to all defendants *at all levels* of the grievance procedure ... their lawsuits or claims may be dismissed immediately" under the PLRA. *Id.* at § IV(N) (emphasis added); *see also Id.* at § IV(C)(4) & (D)(2) (both advising inmates to fully exhaust a grievance *before* filing a lawsuit).

Thus, as to his excessive force claim against Litzsey, Jones was required to fully and properly exhaust his claim by raising and pursuing it through all three steps of the ADC's grievance process. *Id.* at §§ IV(D)–(G). This required him to file a: (1) "Step One" informal resolution within fifteen days of the incident which named Litzsey and explained his involvement in the excessive force incident;[4] (2) "Step Two" formal unit-level grievance raising that complaint with the Warden within three working days of the denial of the informal resolution;[5] and (3) "Step Three" appeal to the appropriate ADC Chief Deputy/Deputy/Assistant Director within five working days of the Warden's Decision on his grievance.[6] *Id*.

---

[4] The person responding to the informal resolution has three days to meet with Jones to attempt to informally resolve the issue. AD 14-16 § IV(E)(4)(a); AD 19-20 § IV(E)(4)(a); and AD 19-34 § IV(E)(4)(a).

[5] The Warden has twenty working days to respond to Step Two grievances. *Id.* at § IV(F)(7).

[6] The ADC Chief Deputy/Deputy/Assistant Director has thirty working days to respond to the Step Three appeals. *Id.* at § IV(G)(6). Absent an extension or unforeseen circumstances, the entire grievance procedure should be completed within seventy-six *working* days, which the ADC's grievance procedure defines as "Monday through Friday, excluding state observed holidays." *Id.* at §§ IV(G)(9) & III(E).

Alternatively, if Jones believed he was suffering an "emergency situation," which the grievance procedure defines as "a substantial risk of physical harm," he was required to submit an "Emergency Grievance" which named Litzsey and explained his involvement in the complaint to "any staff member." *Id.* at § IV(E)(5) and Att. I. That staff member would be required to meet with Jones immediately and determine if an emergency existed. *Id.* at § IV(E)(4)(b). If an emergency existed, corrective action would be taken within twenty-four hours. *Id.* at § IV(E)(5). Otherwise, the Emergency Grievance would be considered a Step One informal resolution and would proceed through the normal three-step grievance procedure. *Id.*

### III. Discussion

In his Motion for Summary Judgment, Litzsey argues that Jones failed to exhaust his administrative remedies because he did not file *any* grievance related to the January 7, 2020 incident. In support of that argument, Litzsey relies on the sworn Declaration of ADC Inmate Grievance Supervisor, Terri Grigsby Brown ("Grigsby Brown"). *Doc. 28-2*. Grigsby Brown states that she: (1) reviewed Jones' grievance history from January 7, 2020 to April 16, 2021;[7] and (2) based on that review, "Jones

---

[7] Grigsby Brown mistakenly states that the Amended Complaint in this action was filed on April 16, 2021 when, in fact, it was filed on April 16, *2020*. *Doc. 28-2 at 6, ¶ 30*; *Doc. 8*.

6

failed to submit a grievance related to [the January 7, 2020] incident." *Doc. 28-2 at 6–7, ¶¶ 30–31*.

In his Response to the Motion for Summary Judgment and his Amended Complaint, Jones alleges he *did* exhaust his administrative remedies. *Doc. 38; Doc. 8 at 4–5*. In whole, Jones' Response states: "I did file a grievance related to the incident. I did exhaust my administrative remedies by appealing according to the inmate grievance procedure (AR 835). Respectfully submitted: Jay Jones." This allegation was not sworn and subscribed to by a notary public or signed under penalty of perjury. Accordingly, the Response has no evidentiary value for summary judgment purposes.

Jones' Amended Complaint, however, *was* signed under penalty of perjury on February 10, 2020 and will be considered in deciding Litzsey's Motion for Summary Judgment.[8]

In his Amended Complaint, which was submitted on the Eastern District of Arkansas' "Form To Be Used By Prisoners In Filing A [§ 1983] Complaint," Jones presents somewhat conflicting information regarding his exhaustion of administrative remedies. He: (1) marked "Yes" in response to the questions asking

---

[8] "A plaintiff's verified complaint is the equivalent of an affidavit for purposes of summary judgment and a complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified complaint." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994–95 (8th Cir. 2001) (internal citations omitted).

if he filed a grievance and whether he "completely exhaust[ed] the grievance[] by appealing to all levels within the grievance procedure;" but (2) in response to the question asking why he did *not* exhaust his administrative remedies, he stated "physical harm & force & continued threats, including aggressive behavior is being asserted against me in complete disregard of my grievance and complaints."[9] *Doc. 8 at 4–5*. Thus, it is unclear if Jones is claiming that: (1) he *did fully* exhaust his administrative remedies but his fully exhausted grievance had no effect on the way he was being treated; *or* (2) he began the grievance procedure but failed to fully exhaust because his grievance was "complete[ly] disregard[ed]."

Jones attaches to both his Complaint and Amended Complaint a Step One Informal Resolution which is virtually illegible. *Doc. 2 at 8; Doc. 8 at 9*.[10] While it is impossible to read either the inmate signature or the date it was signed, it appears to describe the January 7, 2020 excessive force incident: "Litzsey got angry…[and] began macing me with some high power NOS stuff…Litzsey then pull me out…[illegible]…ing my head into the wall for extra measure." *Id.*

What is clear is that the portion of the Informal Resolution that staff was required to complete, date, and sign is entirely blank, as is the portion of the form

---

[9] It also appears that Jones initially wrote he exhausted his grievance "in part," but he marked through those words on his Amended Complaint. *Doc. 8 at 4*.

[10] A second grievance, which is attached only to Jones' Amended Complaint, concerns claims that Litzsey confiscated two silver rings and a knee sleeve from Jones. That grievance is irrelevant because Jones' property claim has already been dismissed. *See Doc. 9; Doc. 13*.

that must be completed by staff to allow the Informal Resolution to become a Step Two grievance. It was Jones' obligation to ensure this Step One informal resolution was completed by staff, assigned a Step Two grievance number and, if relief was denied, proceed through the required Step Three appeal. If staff refused to compete the Step One informal resolution, Jones was required to call that to the attention of the Step Two decision maker and to submit a separate Step One informal resolution to grieve the staff's refusal to properly complete his Step One informal resolution raising the January 7, 2020 excessive force incident with Litzsey. Suffice it to say, Jones has not submitted copies of his "yellow + pink" inmate receipts or the original documents substantiating that he fully and properly exhausted any grievance raising this excessive force incident through all three steps of the ADC's grievance process.

In contrast, Litzsey has provided a sworn declaration by Grigsby Brown that makes it clear Jones did *not* exhaust any such grievance. Four considerations guide the Court's decision that Jones failed to fully and properly exhaust his administrative remedies on the excessive force claims he has asserted against Litzsey in this action.

First, if Jones had completely exhausted his grievance "by appealing to all levels within the grievance procedure": (1) the section at the bottom of the grievance form, "TO BE FILLED OUT BY STAFF ONLY," would be completed and signed by a Tucker Unit staff member; (2) the section of the grievance form titled "STEP TWO: Formal Grievance" would be dated and completed by Jones; (3) the grievance

would have a number assigned in the upper left-hand corner of the form in accordance with ADC's standard procedure, *e.g.*, TU-19-00001; and (4) perhaps most importantly, Jones would have *his copies* of the documents supporting his completion of each stage of the grievance process and the corresponding responses from a Tucker staff member at Step One, the Warden at Step Two, and the ADC Chief Deputy/Deputy/Assistant Director at Step Three. Because none of these hallmarks of a fully exhausted grievance exist, Jones' allegation that he completely exhausted his administrative remedies is completely unsupported by the record.[11]

Second, given the timing of Jones' Complaint, which was filed only sixty-five days after the excessive force incident, it is highly unlikely that he would have been *able* to *fully* exhaust his administrative remedies before he initiated this suit. In his Complaint, signed under penalty of perjury on February 20, 2020, Jones swore that he had fully exhausted his administrative remedies within thirty-four days after the incident. *See Doc. 8 at 4–5, 8*. The time frames provided within the ADC's grievance procedure contemplate that, without any delays, it can be completed within seventy-six *working* days—or approximately within three-and-a-half months. While it might

---

[11] "In deciding a motion for summary judgment, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion…so long as those facts are not so blatantly contradicted by the record that no reasonable jury could believe them." *O'Neil v. City of Iowa City, Iowa*, 496 F.3d 915, 917 (8th Cir. 2007) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (cleaned up).

be *possible* to fully and properly exhaust a grievance within thirty-four days, it is highly unlikely.

Third, Jones does *not* allege that: he was thwarted from filing his grievance; the ADC's grievance procedure was incapable of use; or the grievance procedure was otherwise made unavailable to him.[12] *See Townsend v. Murphy*, 898 F.3d 780, 783–84 (8th Cir. 2018) (finding that prisoner's sworn declaration, which asserted facts establishing that the prison's grievance procedure was unavailable, created a sufficient factual question to overcome summary judgment).

Finally, even if Jones' Emergency Grievance was "complete[ly] disregard[ed],"[13] he was still required to proceed through all three steps of the

---

[12] In *Ross v. Blake*, 136 S. Ct. 1850 (2016), the Court described three ways in which an administrative remedy can be make "unavailable" to an inmate:

> First,…an administrative procedure is unavailable when…it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.
>
> \*\*\*\*\*
>
> Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use…When rules are "so confusing that ... no reasonable prisoner can use them," then "they're no longer available."
>
> \*\*\*\*\*
>
> And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation…And appellate courts have addressed a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures.

*Id.* at 1859–60 (internal citations omitted).

[13] This is a liberal construction of Jones' assertion that: "physical harm & force & continued threats, including aggressive behavior is being asserted against me in complete disregard of my grievance and complaints." Doc. 8 at 5.

11

ADC's grievance procedure. Under the ADC's grievance procedure, if a prisoner does not receive a response to Step 1 within three working days, he may automatically move to Step 2. AD 14-16 § IV(E)(11); AD 19-20 § IV(E)(11); AD 19-34 § IV(E)(11).

Accordingly, if Jones did not receive a response to his Step One informal resolution within three days, he was allowed to proceed directly with a Step Two formal grievance. *Id.* Jones does not allege, and there is no evidence to suggest that he attempted to proceed with a Step Two formal grievance. Accordingly, the unnumbered grievance was not fully exhausted. *See Thornsberry v. Kerstein*, No. 2:20-CV-182-JM-ERE, 2021 WL 4784817, at *6 (E.D. Ark. Aug. 31, 2021) (plaintiff's allegation that he never received a response to his unnumbered emergency grievance at Step One or Step Two was not enough to overcome summary judgment because he did not allege that he had continued through the remaining steps of the ADC grievance process), report and recommendation adopted, 2021 WL 4785791 (E.D. Ark. Oct. 13, 2021), aff'd, No. 21-3434, 2022 WL 1276353 (8th Cir. Apr. 29, 2022).

## IV. Conclusion

Accordingly, because Jones failed to exhaust his available administrative remedies on the excessive force claim he is asserting in this action, the Court should grant Defendant Litzsey's Motion for Summary Judgment.

IT IS THEREFORE RECOMMENDED that Litzsey's Motion for Summary Judgment on the issue of exhaustion (*Doc. 28*) be GRANTED and Jones' Amended Complaint be DISMISSED, without prejudice.

DATED this 27th day of July, 2022.

_____
UNITED STATES MAGISTRATE JUDGE